FILED

# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

2008 DEC 31 P 1: 20

CLERK
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| MIRAGE INNOVATIONS, LTD., | ) |
| Plaintiff, | ) COMPLAINT |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| NOKIA CORPORATION, | ) |
| | ) Civil Action No.: 1:08cv1348 |
| Defendant. | ) |
| | ) AJT/TRJ |

## COMPLAINT

Mirage Innovations, Ltd. ("Mirage") upon knowledge as to its own acts, and upon information and belief as to all other matters, hereby alleges as follows:

### Nature of Action

1. This is an action for correction of the named inventors of U.S. Patents 6,773,114, 6,805,490, and 7,206,107 pursuant to 35 U.S.C. § 256, and for negligent act and/or omission under Israeli Law.

### The Parties

2. Mirage, previously known as PlanOp Planar Optics Ltd., is an Israeli corporation with a principal place of business at 21 Yagia Kapayim Street, Petah Tikvah 49001 Israel.

3. Upon information and belief, Nokia Corporation ("Nokia") is a Finnish corporation with a place of business at Keilalahdentie 2-4 FI-02150 Espoo, Finland.

4. Upon information and belief, Nokia through its agent and/or subsidiary(ies) is incorporated in Delaware, is registered to do business in Virginia, and has offices in Virginia.

## Jurisdiction and Venue

5. This action arises under the Patent Laws of the United States, 35 U.S.C. § 101 *et. seq.* Accordingly, this court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, 1338(a) and 1367; 35 U.S.C. § 256; and the doctrine of supplemental jurisdiction.

6. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, in that this case presents a controversy between a citizen of a different state and a citizen of a foreign state, in which the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

7. The Court has personal jurisdiction over Defendant under Va. Code §8.01-328.1.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## Factual Allegations

9. Until its closure as a consequence of Nokia's improper actions, Mirage was the world's leading company in the field of diffractive optical displays. It had a promising future in the growing market for personal wearable displays, which are important accessories for personal digital assistant's (PDA's), personal video players, gaming, cell phones, mobile TV and the like.

10. Over the last nine years, Mirage had been developing proprietary diffractive optics technology, which by September 2007, had matured into wearable personal display products of desirable quality and performance.

11. Upon information and belief, Nokia is engaged in the mobile telecommunications and network infrastructure businesses and includes three business groups: Mobile Phones, Networks, and the Ventures Organization.

12. Upon information and belief, Nokia has production units and sells its products throughout the world, including the United States and in this district.

13. Mirage and Nokia first met in Tampere, Finland on February 12, 2001, to discuss a possible business relationship concerning Mirage's display technologies. During this meeting,

Mirage presented information concerning the use of its planar optics display technology in connection with various personal electronic devices.

14. On February 26, 2001, the parties entered into a mutual non-disclosure agreement, pursuant to which Mirage continued to provide proprietary information to Nokia regarding Mirage's planar optics technology.

15. For over two and a half years, the parties continued to exchange confidential information regarding the implementation and design of planar optic technology for use in Nokia's mobile phones and other mobile devices, and to negotiate the terms of a potential business relationship.

16. Despite this extended exchange of information, on September 29, 2003, Nokia informed Mirage that it no longer was interested in continuing to discuss a possible business relationship.

17. During Mirage's collaboration with Nokia, unbeknownst to Mirage, Nokia filed three patent applications covering the planar optics display device technology invented either solely by Mirage or jointly by the parties.

18. On December 7, 2001, Nokia filed a first patent application, which issued as U.S. Patent No. 6,773,114 ("the '114 patent"), relating to a "Portable Multimode Display Device." A copy of the patent is attached as Exhibit 1.

19. On September 30, 2002, Nokia filed a second patent application, which issued as U.S. Patent No. 6,805,490 ("the '490 patent"), relating to a "Method and System for Beam Expansion in a Display Device." A copy of the patent is attached as Exhibit 2.

20. On December 13, 2004, Nokia filed a third patent application, which issued as U.S. Patent No. 7,206,107 ("the '107 patent"), relating a "Method and System for Beam Expansion in a Display Device." A copy of the patent is attached as Exhibit 3.

21. The '114, '490, and '107 patents ("the patents in suit") include one or more claims the subject matter of which was invented in whole or in part by individuals at Mirage who are not listed as inventors on the face of the patents, including one or more of Dr. Yehuda Niv, Chief Executive Officer of Mirage, and Mr. Uzia Nivon, Mirage Lab Manager.

22. At least the '107 patent includes claimed subject matter that was invented solely by Mirage employees and Mirage was diligently preparing to file its own application on the invention, which it did file on April 4, 2005—less than four (4) months after Nokia's filing.

23. In September of 2007, after Mirage learned that the patents in suit issued in the name of Nokia with improper inventorship, Mirage contacted Nokia and sought to amicably discuss the matter. Nokia responded by accusing Mirage of infringement of the '107 and '114 patents. As a small technology company that received written notice of such alleged infringement, Mirage had to advise its investors and potential customers. As a result, Mirage could no longer pursue its normal course of business for the products that Nokia claimed to be covered by said patents. Consequently, all such engagements and active negotiations were frozen. Moreover, Mirage was unable to raise vital financing as a result of Nokia's accusations. Notwithstanding Mirage's diligent and urgent appeals to Nokia to reach a settlement, Nokia's protracted refusal to enter into such settlement discussions and its seven month refusal to even meet to discuss the issue, directly resulted in Mirage's inability to continue as an ongoing concern. The consequent suspension of Mirage's business operations resulted in the termination

of all business relationships, cancellation of all contracts, termination of all employees and substantial financial losses as well a significant loss of opportunity for Mirage and its investors.

24. During the nine months following Nokia's notification of Mirage infringement of Nokia's patents, Mirage attempted to settle the matter with Nokia, repeatedly explaining its urgency for Mirage.

25. Mirage made it clear to Nokia that Nokia's improper assertion of inventorship and the chilling effect from the threat of lawsuit, if not remedied in a timely manner, would have dire consequences for Mirage including an inability to (i) raise needed capital and (ii) continue as an ongoing concern. Notwithstanding this knowledge—and explicit notifications to Nokia of the imminent pending harm to Mirage—Nokia continued to ignore Mirage's pleas and persisted in its position, the direct consequence of which was the unavoidable closing of Mirage. The resultant damage to Mirage—all which were known to Nokia in advance—are substantial and irrevocable.

## COUNT I

### Request for Correction of the Named Inventors in the Patents in Suit
### Under 35 U.S.C. § 256

26. Mirage repeats and realleges the allegations of paragraphs 1 through 25 as if set forth at length herein.

27. The '114 patent names the following inventors: Seppo Panimaa, Tapani Levola, Jyrki Kimmel and Jarkko Viinikanoja.

28. The '490 and the '107 patents each names Tapani Levola as the sole inventor.

29. Mirage's Dr. Yehuda Niv is an inventor of one or more of the inventions claimed in each of the patents in suit. In addition, Mr. Uzia Nivon is an inventor of one or more of the

inventions claimed in the '490 and '107 patents. However, neither Dr. Niv nor Mr. Nivon was named as an inventor on any of the patents in suit.

30.     Accordingly, pursuant to 35 U.S.C. § 256, the foregoing persons should be added as inventors on the patents in suit.

## COUNT II
### Negligent Act and/or Omission under Israeli Law

31.     Mirage repeats and realleges the allegations of paragraphs 1 through 30 as if set forth at length herein.

32.     Nokia had knowledge of the above described business relationships between Mirage and its partners, vendors, customers, investors, etc.

33.     Mirage was in the process of negotiating a major manufacturing and distribution contract with a leading overseas company.

34.     Nokia was informed by Mirage of the status of Mirage's contract negotiations with said company, which is also a major supplier to Nokia. In fact, Nokia even encouraged Mirage to pursue such a contract with said company. Nokia was informed of the fact that such a contract would require Mirage to provide patent indemnification to the manufacturer. Notwithstanding, Nokia continued to refuse to provide Mirage with the proper form of assurance (such as joint patent ownership, non-assertion or a patent license with an unrestricted right to assign or sublicense) that would enable Mirage to consummate said contract.

35.     Under the circumstances set forth herein, with regard to the patents in suit and the correction of the inventorship information, as well as with regard of the interference in Mirage's business relationships, Nokia had both a conceptual and concrete duty of care towards Mirage.

36.     Nokia was negligent when it performed under the same circumstances and/or did not perform under the same circumstances an act that a reasonable and prudent person would

- 6 -

have performed under the same circumstances, and/or did not implement the same level of expertise and/or did not implement the same level of care that a reasonable, prudent and responsible person would have used or implemented under the same circumstances. Without derogating from the generality of the forgoing allegations, Mirage will add and allege that the damages on which this action is predicated were caused due to the negligence acts and/or omissions and/or lack of care of Nokia and/or someone on its behalf and/or one of its agents and/or one of its employees and/or one of its consultants, in whole or in part, as follows:

(a) It erred in its filing of the applications for the patents in suit; and/or

(b) It failed to correctly and properly name the inventors on each of the patents in suit; and/or

(c) It failed to act in a timely manner and within a reasonable time to correct the errors in the patent applications and/or issued patents, even when advised of the errors; and/or

(d) It did not timely notify Mirage of filing the patent applications, although it knew or had reason to believe the applications were based, in full or in part, on information provided by Mirage; and/or

(e) It did not act diligently or with the proper haste to allow the correction of the inventorship of the patents in suit in a manner that would have prevented and/or lessened the damages incurred by Mirage; and/or

(f) It did not implement a reasonable process for supervising the patent application process and for verification of the accuracy of the information included in the patent applications filed by it; and/or

(g) It refused to provide Mirage with adequate form of assurance that would enable Mirage to consummate its business relationships; and/or

(h) It improperly interfered with said business relationships.

37. Nokia's negligent acts and/or omissions and breach of duty of care as detailed above caused, and continue to cause, Mirage a significant and foreseeable damage, and accordingly constitutes a tort under Section 35 of the Israeli Torts Ordinance (as amended) and under Israeli case law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. Ordering that Nokia file a Petition to Correct Inventorship for each of the patents in suit, which identifies Dr. Yehuda Niv as an inventor in all three patents in suit, and Mr. Uzia Nivon as an inventor of the '490 and '107 patents.

2. Pursuant to 35 U.S.C. § 256, directing the Director of the United States Patent and Trademark Office to issue certificates correcting the inventorship and ownership of the patents in suit.

3. That Mirage be awarded damages caused by Nokia's improper interference with Mirage's contractual and/or business relationships.

4. That in view of the willful, wanton and deliberate nature of Nokia's wrongful acts, punitive and exemplary damages be awarded to Mirage.

5. That Mirage recover from Nokia its reasonable attorneys' fees together with the costs of this action.

6. That Mirage have such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff Mirage respectfully demands a trial by jury of any and all issues properly triable to a jury in the above-captioned action.

Dated: December 31, 2008                    Respectfully submitted,

KENYON & KENYON LLP

By: /s/ Erik C. Kane
Erik C. Kane (VSB #68294)
KENYON & KENYON LLP
1500 K Street, N.W.; Suite 700
Washington, DC 20005-1257
Tel.: (202) 220 – 4200
Fax: (202) 220 – 4201
ekane@kenyon.com

John Flock
Jeffrey S. Ginsberg
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
Tel.: (212) 425 – 7200
Fax: (212) 425 – 5288

*Counsel for Plaintiff,
Mirage Innovations, Ltd.*